IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ROGER LYNCH,

      Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO.: 5:18-cv-43

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ" or "ALJ Casher") denying his claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision and find that Plaintiff was disabled as of his date last insured or, in the alternative, that the case be remanded for additional consideration. Doc. 1 at 4. Defendant asserts the Commissioner's decision should be affirmed. Doc. 13 at 13. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on February 19, 2014, initially alleging disability beginning November 21, 2012 before amending that date to October 19, 2014. Plaintiff alleges he became disabled due to back and neck pain, ankle trouble, right leg pain, right shoulder pain, degenerative discs, carpal tunnel in both wrists, and right elbow tendon damage. Doc. 10-3 at 2 (R. 49). After his claim was denied

initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On February 28, 2017, ALJ Casher conducted a hearing in Waycross, Georgia, at which Plaintiff, who was represented by counsel, appeared and testified. Doc. 10-2 at 12 (R. 11). Kenneth L. Bennett, a vocational expert, also appeared at the hearing. Id. ALJ Casher found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since October 19, 2014. Id. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. Id. at 2 (R. 1).

Plaintiff, born on October 19, 1964, was 52 years old when ALJ Casher issued his final decision and 50 years old on his alleged disability onset date. Doc. 10-3 at 2 (R. 49). He has a limited education and prior work experience as a carpenter. Id. at 5 (R. 52).

## I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [his] physical or mental impairment or impairments are of such severity that he is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since October 19, 2014, his alleged onset date. Doc. 10-2 at 14 (R. 13). At step two, ALJ Casher determined Plaintiff had several severe impairments, including lumbago, osteoarthritis, a history of T12 compression deformity, degenerative disc disease, lumbar facet disease, cervical spondylosis and cervicalgia, carpal tunnel syndrome, right shoulder arthroplasty and degenerative joint disease with history of rotator cuff tear, a history of right fibula fracture, and chronic pain. Id. The ALJ also determined Plaintiff had non-severe impairments of tobacco use disorder and skin sensation disorder. Id. However, at the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Id. at 15 (R. 14). The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: standing or walking six hours of an eight-hour workday with up to six hours of seated work; occasional left lower extremity pedal controls with frequent bending, kneeling, and stooping; avoid climbing ladders and scaffolds; occasional crawling; frequent reaching in all directions; lifting or carrying 20 pounds occasionally and 10 pounds frequently; and no exposure to extreme heat or cold or any hazardous conditions. Id. at 15–19 (R. 14–18). At the next step, the ALJ determined Plaintiff could not perform any past relevant work as a construction worker. Id. at 19 (R. 18). However, at the final step of the analysis, the ALJ concluded Plaintiff had the qualifications and residual functional capacity to perform several jobs that existed in substantial number in the national economy, including marker, counter attendant, and cafeteria attendant, all of which are unskilled jobs at the light exertional level. Id. at 20 (R. 19). Based upon this finding, the ALJ concluded that Plaintiff was not under a disability at any time from October 19, 2014 through June 30, 2015, his date last insured. Id. at 21 (R. 20).

## II.     Issues Presented

Plaintiff, proceeding pro se, does not set forth a clear enumeration of error.  However, it appears Plaintiff contends the ALJ incorrectly concluded Plaintiff refused treatment for his shoulder disability as well as physical therapy.  Doc. 1 at 3; Doc. 12 at 4.  Plaintiff also contends the ALJ's decision was incorrect and he was in fact disabled as of October 19, 2014.  Doc. 12.  The Court accordingly considers whether the ALJ's decision was supported by substantial evidence.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff asserts ALJ Casher erred in finding he was not disabled as of October 19, 2014. Doc. 12. Plaintiff argues the ALJ incorrectly concluded that he refused shoulder surgery and physical therapy. Id. at 4. Plaintiff also contends he has sustained multiple injuries throughout his career in construction and that they leave him unable to work. Id. at 3–4.

Defendant asserts ALJ Casher's determination that Plaintiff was not disabled is supported by substantial evidence. Doc. 13 at 7–12. Defendant specifically contends the ALJ examined Plaintiff's medical records from 2014 and 2015, prior to Plaintiff's date last insured, which reflected pain and a decreased range of motion in his neck, but no deficiencies in gait or muscle strength. Id. at 10. Defendant claims the ALJ correctly considered the opinion of Dr. Minal Krishnamurthy, a state agency medical consultant, who opined Plaintiff could perform light work with postural limitations and no more than frequent reaching in any direction. Id. Finally,

Defendant claims the ALJ did not find that Plaintiff refused shoulder surgery but rather found that Plaintiff denied having surgery, which is consistent with his medical records. Id. at 12.

At step two, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1520a(a), 404.1523, 416.920(a)(4)(ii), (c), 416.920a(a), & 416.923. "[T]he finding of any severe impairment, whether . . . it qualifies as a disability and whether . . . it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, such as the abilities and aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521(a)–(b) & 416.921(a)–(b). In other words, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." McDaniel, 800 F.2d at 1031; see Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting the mere existence of impairments does not reveal the extent to which they limit the claimant's ability to work). Pertinent examples of "basic work activities" include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 857 (11th Cir. 2013).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)).  "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks."  Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013).  "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record."  Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted).

A residual functioning capacity assessment must always consider and address medical source opinions.  If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.  Social Security Ruling 96-8p.  "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability."  Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007).  The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d), (e)(2).

In determining Plaintiff had the residual functional capacity to perform work at the light exertional level with limitations, ALJ Casher remarked Plaintiff's severe impairments precluded him from performing any past relevant work in the construction field.  Doc. 10-2 at 19 (R. 18). In making this determination, the ALJ considered Plaintiff's statements that he was in constant

8

pain of varying severity and his statements at the February 8, 2017 hearing that he spends most of his day sitting in a recliner or laying on the floor and cannot walk far or lift more than a coffee pot in both hands.  Id. at 16 (R. 15).  However, the ALJ concluded that the extent of Plaintiff's alleged symptoms was not consistent with medical evidence and other evidence of record.  Id.  The ALJ examined medical records from 2011 through 2015 documenting several injuries to Plaintiff's ankle, wrists, shoulders, and spine but also noted that Plaintiff's pain level was mostly consistent and tolerable with medication.  Id. at 16–18 (R. 15–17).  The ALJ also noted that no medical records corroborated Plaintiff's testimony that his pain has been so severe as to be disabling.  Id. at 18 (R. 17).  Rather, radiological studies of the lumbar spine, where Plaintiff had his most significant pain, showed mild compression and degeneration but no nerve root impingement or spinal stenosis.  Doc. 10-10 at 30–31 (R. 295–96); Doc. 10-11 at 13–17 (R. 325–29).  Additionally, a physical exam in October 2015 showed Plaintiff had 5/5 strength in his upper and lower extremities.  Doc. 10-12 at 75–76 (R. 451–52).  In January 2016, medical records noted Plaintiff was able to assist in unloading firewood and experienced significant improvement since increasing his morphine dose.  Id. at 69 (R. 445).

       Plaintiff argues the ALJ incorrectly concluded he was offered shoulder surgery and physical therapy but refused both.  Doc. 12 at 4.  However, when examining Plaintiff's medical records, the ALJ noted that Plaintiff had sustained a rotator cuff tear in a 1987 motor vehicle accident and "denied any surgical intervention."  Doc. 10-2 at 16 (R. 15).  This is corroborated by a medical record dated March 14, 2012 which notes that "Patient denies any surgical intervention[,]" related to a 1987 motor vehicle accident and subsequent rotator cuff tear.  Doc. 10-12 at 4 (R. 380).  While the wording of the ALJ's finding could be interpreted to mean that Plaintiff was offered and refused surgery for his shoulder, the context of the ALJ's comment and

9

its similarity in phrasing to Plaintiff's medical records make clear that the ALJ found that Plaintiff simply denied that he ever had surgery to correct his shoulder injury.[1] The ALJ expressed no opinion regarding whether Plaintiff accepted or refused physical therapy, noting only, "[i]t was recommended that the claimant participate in range of motion, stretching exercises and aerobic exercise such as walking 30 minutes per day." Doc. 10-2 at 17 (R. 16). This is corroborated by Plaintiff's medical records. Doc. 10-12 at 8 (R. 384).

The ALJ assigned little weight to Dr. Willaim V. Choisser's opinion that Plaintiff could stand for no more than 10 minutes at a time and sit for no more than 30 minutes at a time because Dr. Choisser's assessment of Plaintiff was made in January 2017, more than a year past Plaintiff's date last insured. Id. at 47–55 (R. 423–31). Additionally, the ALJ afforded partial weight to the opinion of State Agency medical consultants, which largely corresponded with the findings of the ALJ. Doc. 10-3 at 2–10 (R. 49–57), 12–21 (R. 59–68). However, the ALJ added additional limitations to Plaintiff's residual functional capacity above those recommended by the medical consultants in light of Plaintiff's wrist pain and history of pain management. Doc. 10-2 at 19 (R. 18).

In sum, the ALJ cited substantial evidence to support his conclusion that Plaintiff was not disabled as of his date last insured. The ALJ's determination to assign little weight to the opinion of Dr. Choisser is supported by substantial evidence and clearly articulated. The ALJ did not, as Plaintiff argues, find that Plaintiff refused shoulder surgery; rather, the ALJ found that Plaintiff denied ever having surgery to correct his shoulder injury. Doc. 10-2 at 16 (R. 15). The ALJ found that substantial evidence indicated that, while Plaintiff was certainly injured and in

---

[1] In the same paragraph, the ALJ notes, "[Plaintiff] denied taking any pain medications at the time due to side effects[.]" The ALJ used the word "deny" to mean that Plaintiff did not take any pain medication, not that Plaintiff refused pain medication. This supports the conclusion that the ALJ used the word "deny" in the same way when referring to Plaintiff's shoulder injury.

pain, he was capable of performing jobs that exist in substantial numbers in the national economy. Plaintiff argues, and the ALJ agreed, that Plaintiff could not return to construction work as of his date last insured. Plaintiff testified at the hearing that he spends most of any given day in a recliner and can lift no more than five pounds. Id. at 34 (R. 33), 36 (R. 35), 39 (R. 38). However, Plaintiff has not identified any evidence in the record showing that his disabilities were that severe as of his date last insured. Rather, medical records showed that, as of late 2015 and early 2016, Plaintiff had full strength in his extremities and was able to assist in unloading firewood. Doc. 10-12 at 69 (R. 445), 75–76 (R. 451–52). The ALJ relied on this and other substantial evidence of record when finding that Plaintiff had the residual functional capacity as of his date last insured to perform jobs that exist in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 15th day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA